# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| ANTHONY STOKES | CIVIL ACTION NO. 08-0806 |
| VS. | |
| | JUDGE ROBERT G. JAMES |
| BURL CAIN, WARDEN | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

On June 9, 2008, *pro se* Petitioner Anthony Stokes, filed the instant application for writ of *habeas corpus* attacking his 2004 conviction for second degree murder in the Fourth Judicial District Court, Ouachita Parish.  [doc. # 1, 4].  On July 14, 2008, the undersigned, applying then current Fifth Circuit precedent (*Salinas v. Dretke*, 354 F.3d 425 (5th Cir.2004)), observed that since Petitioner failed to apply for a direct appeal within the time limits established by Louisiana law, the judgment of conviction became final within 30 days of the date of sentencing and accordingly, the petition was time-barred by the provisions of 28 U.S.C. §2244(d)(1)(A).  The Report and Recommendation was adopted by the Court and a judgment of dismissal was rendered.  [docs. # 7, 9].

While this matter was on appeal, the United States Supreme Court reversed *Salinas* and determined that in calculating the conclusion of direct review pursuant to §2244(d)(1)(A), federal courts must consider the date of finality by taking into account the conclusion of the out-of-time appeal granted by the state courts.  *See Jimenez v. Quarterman,* 555 U.S. 113 (2009).  In May 2010, the Fifth Circuit, applying *Jimenez,*  granted a Certificate of Appealability, vacated the District Court's judgment, and remanded the case for further proceedings.  *See Stokes v. Cain,*

No. 08-30902 at [doc. # 21].   On remand, this matter has been again referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

On October 24, 2012, Respondent filed a Motion to Dismiss Petitioner's *habeas* petition for lack of exhaustion.  [doc. # 31].  Respondent argues that Petitioner has presented a "mixed petition" to the Court, and therefore, his entire *habeas* petitioner should be dismissed under *Rose v. Lundy*, 455 U.S. 509 (1982) and progeny for failure to exhaust state court remedies.  *Id.* at 3. The undersigned deferred ruling on the pending motion until Respondent fully complied with the Court's previous order, which directed Respondent to respond to the merits of the petition.  [doc. # 34].  On January 3, 2013, Respondent filed its response. [doc. #36].  Petitioner filed his reply on January 9, 2013.  Briefing is now complete.

 For the following reasons, it is recommended that Petitioner's *habeas* claims raised on direct appeal concerning (1) the prior recorded statement of Frederick Dwayne Wilhite; (2) the "dry run" testimony of Tony Hunter; and (3) (labeled as "Supplemental argument) the failure of the court to receive into evidence the proposed exculpatory testimony of Glen Nelson [doc. # 1, P. 5-12] be **DISMISSED WITH PREJUDICE** because Petitioner failed to exhaust state court remedies with regard to these claims and although now technically exhausted, they remain procedurally defaulted.  Petitioner's remaining claims – insufficiency of the evidence and ineffective assistance of counsel – will be addressed on the merits.

### Statement of the Case

On December 18, 2000, Petitioner was indicted by the Ouachita Parish Grand Jury and

charged with the November 28, 1997 second degree murder of Joseph Collins.[1]  His first trial

ended in a mistrial on February 28, 2003. [doc. # 1, P. 1; doc. # 22-1, P. 6].  On January 30,

2004, Petitioner's second trial concluded and he was found guilty as charged; his motion for a

new trial was denied and on June 17, 2004 the mandatory life sentence was imposed.  Petitioner

did not timely appeal.  On May 3, 2005, he filed an application for post-conviction relief seeking

an out-of-time appeal.[2]  [doc. # 1, P. 2].  In due course, he was granted an out-of-time appeal and

the Louisiana Appellate Project was appointed to represent him.  Petitioner argued the following

Assignments of Error on direct appeal:  (1) the trial court erred by allowing the state to play a

prior recorded statement of a witness to the jury in order to impeach the witness' testimony and

thereby prejudice the defense by allowing the state to offer the out of court statement as

---

[1] The Second Circuit Court of Appeals summarized the facts of the case as follows: "On November 28, 1997, [Joseph] Collins was shot nine times as he looked for something in his vehicle. A neighbor was having a conversation with Collins when he heard the gunshots but could only describe the shooter as a short person wearing a black hooded sweatshirt. The neighbor was able to identify Stokes as a person who had visited with Collins prior to the shooting and who was similar in size and stature to the shooter. On the day following the shooting, Stokes' aunt brought him to the police station. After being fully advised of his rights, Stokes gave a detailed statement in which he confessed to shooting Collins. Stokes also attempted to lead police to the location of the crime weapon, but the gun was never recovered. After his arrest, Stokes changed his confession twice. He ultimately claimed that it was Tony Hunter who had killed Collins and that he had made the confession to police in an attempt to protect his sister who was Hunter's girlfriend and the mother of Hunter's children. Frederick Dewayne Wilhite, a fourteen year-old witness, gave a statement to police claiming that Stokes showed him a gun in late November, 1997. The witness recanted his story at trial." *State v. Stokes*, 40,970-KA, Doc. 22-1, p. 5; see also Doc. 26-1, pp. 31-34.

[2] In Louisiana, the right to appeal a felony conviction is forfeited if the motion for appeal is not filed within the limitations period provided by La. C.Cr.P. art. 914. Thereafter, the right to appeal can be reinstated only through an application for post-conviction relief seeking an out-of-time appeal. See *State v. Counterman*, 475 So.2d 336, 338, 339 (La.1985) (Once the time delays provided in Article 914 have expired, the appropriate procedural vehicle for a defendant to seek the exercise of his right to appeal is an application for post-conviction relief under La. C.Cr.P. art. 924 *et seq*.).

substantive evidence,  in violation of Stokes's rights under the Sixth and Fourteenth Amendment

to the United States Constitution; and,  (2) the trial court erred when it required an unfair hearing

outside the presence of the jury to dry run testimony, substantially impairing the defense by

requiring defense witnesses to convince the trial court of their credibility in violation of Stokes's

rights under the Sixth and Fourteenth Amendments to the United States Constitution.  [doc. # 1,

P. 5; doc. # 4, ¶9].  In a supplemental *pro se* claim, he argued that the trial court erred when it

denied him the right to present the testimony of Glen Nelson who would have explained who

committed the murder, how it was committed, and why.  [doc. # 26-1, P. 34].

On April 12, 2006, the Second Circuit affirmed his conviction in an unpublished opinion.

*State of Louisiana v. Anthony Montrel Stokes*, 2005-40970 (La. App. 2 Cir. 4/12/2006), 926

So.2d 164 (Table); *see also* [doc. # 1, P. 3; doc. # 22-1, P. 4-7]; *see also* Second Circuit Slip

Opinion at [doc. # 26-1, P. 31-34].  The Court of Appeals rejected each assignment as follows:

> In both of his assigned arguments, Stokes raises error which occurred during his
> first trial which resulted in a mistrial. Those issues involve the playing of an
> interview tape of Frederick Wilhite for impeachment of the witness and the
> propriety of the court's ordering of an evidentiary hearing regarding admissions by
> Hunter.
>
> Because Stokes' first trial ended in mistrial, however, any error which occurred
> then is not relevant to the verdict in his second trial or on appeal of that
> conviction. [citations omitted]
>
> The only remaining argument concerns the introduction of Wilhite's edited prior
> inconsistent statement at the second trial. A review of the record shows that at
> trial Wilhite denied he told police that Stokes had shown him a gun. The defense
> objected to the questioning on the grounds that the prosecution had failed to first
> ask Wilhite if he had seen Stokes with a gun. The state complied with the defense
> request and Wilhite denied seeing Stokes with a gun or telling police that Stokes
> showed him a gun. The state moved to play an edited version of Wilhite's
> contrary statement to police. The defense offered no objection. Because Stokes
> urged no objection to the introduction of Wilhite's edited prior inconsistent

statement at the second trial, he is precluded from raising that issue on appeal. La. C.Cr.P. art. 841, *State v. Smith*, 39,698 (La. App. 2d Cir. 6/29/05), 907 So.2d 192. Thus, this claim has no merit.

In a *pro se* supplemental brief, Stokes offers reasons why he was harmed by the trial court's 'denial' of his attempt to present testimony of Glen Nelson. Stokes argues that Nelson would have explained who committed the murder, how it was committed, and why.

A review of the record reveals that although Nelson's testimony was the subject of proceedings, including writ applications, during the first mistrial, the trial court did not 'deny' Stokes' attempt to present Nelson's testimony at the second trial. Rather, the record reflects that the defendant called Nelson to the stand. Nelson, however, upon advice from his defense counsel, asserted his Fifth Amendment privilege against self-incrimination and refused to testify. Hence, this argument is baseless and meritless.

*State v. Stokes*, No. 40,970-KA (La. App. 2 Cir. 4/12/2006) at [doc. # 22-1, P. 4-7].

According to Petitioner, he sought further direct review in the Louisiana Supreme Court;

however, the presumptively reliable published jurisprudence refutes that allegation, and

Petitioner has not provided evidence to establish this claim.[3]

On February 2, 2007, Petitioner filed an Application for post-conviction relief in the

___

[3] The published jurisprudence does not support Petitioner's claim that he sought further direct review in the Louisiana Supreme Court following the April 2006 decision of the Second Circuit Court of Appeals. The published jurisprudence reveals only one writ judgment involving the Petitioner in the Louisiana Supreme Court during the applicable time period. *See State of Louisiana ex rel. Stokes v. State of Louisiana*, 2007-1074 (La. 3/7/2008), 977 So.2d 900. However, that judgment referenced a matter in the Second Circuit Court of Appeals under Docket Number 42420-KH and not Docket Number 40970-KH which was the docket number assigned by the Second Circuit Court of Appeals to petitioner's appeal. This Supreme Court writ judgment under Docket Number 2007-1074 was a writ denial related to petitioner's post-conviction proceeding and not the direct appeal proceeding. Petitioner elsewhere admits that the writ judgment under Supreme Court Docket Number 2007-1074 was related to post-conviction and not direct appeal. *See* [doc. # 1, P. 3-4] ("Stokes then filed into the Second Circuit Court of Appeals his supervisory writ of review on post-conviction application docket No. KH 07-42420. The court denied relief April 4, 2007... Stokes then filed his writ of certiorari into the Louisiana Supreme Court in docket no. 2007-KH-1074. The court denied his writ/application with a one word denial March 7, 2008.")

Fourth Judicial District Court.  He argued two claims for relief: (1) insufficiency of the evidence; and, (2) ineffective assistance of appellate counsel based on counsel's failure to argue insufficiency of the evidence on appeal.  [doc. # 1, P. 5; doc. # 4, ¶11; doc. # 26-1, P. 1-27]. Petitioner's application was summarily denied by the trial judge on February 5, 2007.  [doc. # 26-1, P. 2].

Petitioner sought further review in the Second Circuit Court of Appeals; however, he did not provide a copy of his writ application. On April 4, 2007, that court denied relief in an unpublished order under Docket Number KH 07-42420.  In denying relief, the appeals court noted that Petitioner raised claims of insufficiency of the evidence and ineffective assistance of counsel for failing to argue insufficiency of evidence on appeal,  but he failed to provide the necessary transcripts to allow review of such issues. [doc. # 26-1, P. 28-29]

Petitioner applied for writs in the Louisiana Supreme Court; however, he failed to provide a copy of his writ application.  On March 7, 2008, writs were denied without comment.  *See State of Louisiana ex rel. Anthony Stokes v. State of Louisiana*, 2007-1074 (La. 3/7/2008), 977 So.2d 900.

Petitioner submitted an unsigned and undated *pro se* petition for *habeas corpus* which was received and filed on June 9, 2008. [doc. # 1].  He argued the two counseled claims and the *pro se* claim he presented to the Second Circuit on direct review during the out-of-time appeal process[4] and the two *pro se* claims he raised in his application for post-conviction relief in the

_____

[4] The counseled claims raised on direct appeal were: (1) the trial court erred by allowing the state to play a prior recorded statement of a witness to impeach the witness' testimony; and, (2) the trial court erred when it required an unfair hearing outside the presence of the jury. Petitioner argued a *pro se* claim in which he argued that "... he was harmed by the trial court's 'denial' of his attempt to present the testimony of Glen Nelson. Stokes argues that Nelson would

Fourth Judicial District Court, the Second Circuit Court of Appeals, and the Louisiana Supreme Court, namely insufficiency of the evidence and ineffective assistance of appellate counsel based on his failure to argue insufficiency of the evidence on appeal.  [doc. # 1; doc. # 4]

As previously noted, the undersigned initially recommended dismissal as time-barred [doc. # 7] and the Court adopted the recommendation.  [doc. # 9].  On June 1, 2012, the undersigned directed Petitioner to amend his pleadings and to provide "[a]rgument and evidence to support his claim that he exhausted available State Court remedies with regard to the claims raised on direct appeal and in his application for post-conviction relief..." and, to the extent that he could not establish exhaustion to "provide evidence and argument to demonstrate cause for his default, prejudice resulting therefrom, or, that a miscarriage of justice will result in the event that his claims are dismissed as procedurally defaulted . . . "  [doc. # 24].  Then, on June 14, 2012, he filed a pleading asserting that the failure to consider his claims would result in a miscarriage of justice but offered no facts or argument in support of this conclusory claim.  [doc. # 26].

### *Law, Analysis, and Order*

### *1. Exhaustion of State Court Remedies and Procedural Default – Direct Appeal Claims*

Federal *habeas corpus* review of state court convictions is limited by the intertwined doctrines of procedural default and exhaustion of state court remedies. Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, ("traditional" procedural default), or (2) the petitioner fails to properly exhaust all available state court remedies, and the state court to which he would be required to

_____

have explained who committed the murder, how it was committed, and why."

petition would now find the claims procedurally barred, ("technical" procedural default). In either instance, the petitioner is deemed to have forfeited his federal *habeas* claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–55 (5th Cir. 1999) (citing *Coleman v. Thompson*, 501 U.S. 722 (1986); *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999)).

The federal *habeas corpus* statute and decades of federal jurisprudence require a petitioner who is in custody pursuant to the judgment of a state court to exhaust all available state court remedies prior to filing his federal petition seeking *habeas corpus* relief.  28 U.S.C. §2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509 (1982); *Minor v. Lucas*, 697 F.2d 697 (5th Cir. 1983); *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998).  In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts in a "procedurally proper manner."  *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir.2001); *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir.1998) citing *Richardson v. Procunier*, 762 F.2d 429, 431–32 (5th Cir.1985); *Mercadel*, 179 F.3d at 275 citing *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982); *Deter v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993).  Moreover, each claim must be presented to the state's highest court, even when review by that court is discretionary.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Magouirk*, 144 F.3d at 360 (citing *Richardson*, 762 F.2d at 431–32).  In Louisiana, the highest court is the Louisiana Supreme Court. *See* LSA—Const. Art. 5, § 5(a) ("The Supreme Court has general supervisory jurisdiction over all other courts . . . ")

Thus, in order for a Louisiana prisoner to have exhausted his state court remedies, he

must have fairly presented the substance of his federal constitutional claims to the Louisiana

Supreme Court in a procedurally correct manner. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir.

1997). Exhaustion requires that any federal constitutional claim presented to the state courts be

supported by the same factual allegations and legal theories upon which the petitioner bases his

federal claims. *Picard v. Connor*, 404 U.S. 270, 276 (1971).

As demonstrated *supra*, the presumptively reliable published jurisprudence of the State of

Louisiana indicates that Petitioner did not seek review in the Louisiana Supreme Court on direct

appeal. Since he did not present his direct appeal claims – concerning the testimony of Frederick

Wilhite and Glen Nelson – to the Louisiana Supreme Court, state court remedies as to those

claims remain unexhausted. Further, it appears from the unpublished opinion of the Second

Circuit Court of Appeals, that the errors complained of with regard to the testimony of Wilhite at

the second trial, were dismissed as procedurally defaulted.

### 2. Procedural Default of Unexhausted Claims Raised on Direct Appeal

Of course, should Petitioner attempt to return to the Louisiana Courts to raise his direct

appeals claims anew, his efforts would be doomed to failure since a second application for

post-conviction relief would be barred by the provisions of La.C.Cr.P. art. 930.4(D) which

prohibit repetitive applications, or, more likely, as time-barred by La.C.Cr.P. art. 930.8 which

establishes a two-year period of limitations for filing post-conviction claims.[5] Thus, while

---

[5] La. C.Cr.P. art. 930.4(D) provides, "A successive application may be dismissed if it fails
to raise a new or different claim." Art. 930 .8(A) provides, "No application for post-conviction
relief, including applications which seek an out-of-time appeal, shall be considered if it is filed
more than two years after the judgment of conviction and sentence has become final under the
provisions of Article ... 922." Under art. 922, Petitioner's judgment of conviction became final
14 days after April 12, 2006 when the Second Circuit affirmed his conviction and Petitioner did
not apply for rehearing or certiorari in the Louisiana Supreme Court. Clearly more than 2 years

Petitioner's Assignments of Error on direct appeal were not exhausted, they can be said to be "technically exhausted" since no state-court remedies remain available.  A petitioner has "technically exhausted" his federal claim if he fails to properly and timely present it to the state courts and is thereafter barred from seeking relief in those courts.  *Magouirk v. Phillips*, 144 F.3d 348 (5th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 731–33 (1986); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir.1995); *Coleman*, 111 S.Ct. 732, 735 fn. 1; *Bledsue*, 188 F.3d at 254–55; *Fuller v. Johnson*, 158 F.3d 903, 905–06 (5th Cir. 1998)). In such a case, however, there is no difference between non-exhaustion and procedural default. *Magouirk*, 144 F.3d at 358.  Accordingly, when a petitioner fails to exhaust state court remedies because he has allowed his federal claims to lapse, those claims are considered "technically" procedurally defaulted.  *Id.*

This Court may not review the merits of these procedurally defaulted claims unless Petitioner demonstrates that he should be excused from application of the procedural default doctrine. This he can do by showing proper exhaustion of his state court remedies, or, failing that, by showing either cause and prejudice or that a miscarriage of justice will result from the denial of federal *habeas corpus* review.  *See Finley*, 243 F.3d 215, 220–221 (5th Cir. 2001); *Coleman, supra*; *McCleskey v. Zant*, 499 U.S. 467 (1991); *Moore v. Roberts*, 83 F.3d 699 (5th Cir. 1996); *Gray v. Netherland*, 518 U.S. 152 (1996); *Sones*, 61 F.3d at 416; *Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 904; *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995); *Callins v.*

---

have elapsed since that date therefore Petitioner would be unable to mount another round of post-conviction litigation. Nor could Petitioner now return to the Louisiana Supreme Court to seek review of his unexhausted direct appeal claims. *See* Supreme Court Rule X, § 5(a) ("An application seeking to review a judgment of the court of appeal ... after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal .")

*Johnson*, 89 F.3d 210, 213 (5th Cir. 1996) (quoting *McClesky*, 499 U.S. at 495).

### *Cause and Prejudice*

In *Murray v. Carrier*, the Supreme Court explained that "cause" in this context refers to an impediment external to the defense:

> [W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard.

*Murray*, 477 U.S. at 488 (internal citations omitted).

Clearly, the cause of the default was Petitioner's failure to timely seek further direct review in the Louisiana Supreme Court.  Thus, Petitioner has not shown "cause" for his default, and, if a petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice.  *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992).  Nevertheless, in this case, even if Petitioner could show cause for his default, he cannot show prejudice since he is unable to show that even properly filed writ applications would have resulted in judgments in his favor.[6]

─────────────

[6] Petitioner might argue that the cause of his default was the failure of his appellate counsel to raise those claims in an application for certiorari in the Louisiana Supreme Court. Ineffective assistance of appellate counsel may provide cause in this context, but "the exhaustion doctrine . . . generally requires that a claim for ineffective assistance of counsel be presented to the state courts as an independent claim before it can be used to establish cause for procedural default." *Murray v. Carrier*, 477 U.S. at 488–89. A claim of ineffective assistance of counsel on direct appeal is an independent constitutional violation, which must itself be exhausted using state collateral review procedures. *Edwards v. Carpenter*, 529 U.S. 446, 451–53 (2000). Petitioner argued a claim of ineffective assistance of appellate counsel; however, his claim alleged fault on the part of counsel for failing to argue sufficiency of the evidence on direct appeal.  Since Petitioner did not raise an independent claim of ineffective assistance of appellate counsel based on counsel's failure to perfect an application for certiorari he cannot rely on such a claim to establish "cause" sufficient to excuse his procedural default of these unexhausted

### *Miscarriage of Justice*

In order for a *habeas corpus* petitioner to avoid a procedural default by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 478; Glover, 128 F.3d at 904. To support such an exception, the petitioner must allege that as a factual matter he did not commit the crime. *Corwin v. Johnson*, 150 F.3d 467, 473 (5th Cir. 1998); *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995). Thus, the petitioner must make a "colorable showing of factual innocence." *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir. 1996) (quoting *McClesky v. Zant*, 499 U.S. 467, 495 (1993)).

Petitioner has provided his own self-serving and conclusory claims of factual innocence, bolstered by what purports to be the affidavit of a third party who claims that the real murderer confessed to him.  The information provided thus far is insufficient to allow Petitioner to avoid procedural default of his direct appeals claim on grounds of actual innocence.  As noted elsewhere in the record, Petitioner initially confessed to the homicide he now stands convicted of.[7]  He has now presented what purports to be the affidavit of another individual who claims that

---

claims. *Hatten v. Quarterman*, 570 F.3d 595 (5th Cir. 2009).

[7] As noted by the Court of Appeals, "On the day following the shooting, Stokes' aunt brought him to the police station. After being fully advised of his rights, <u>Stokes gave a detailed statement in which he confessed to shooting Collins. Stokes also attempted to lead police to the location of the crime weapon, but the gun was never recovered</u>. After his arrest, Stokes changed his confession twice. He ultimately claimed that it was Tony Hunter who had killed Collins and that he had made the confession to police in an attempt to protect his sister who was Hunter's girlfriend and the mother of Hunter's children. Frederick Dewayne Wilhite, a fourteen year-old witness, gave a statement to police claiming that Stokes showed him a gun in late November, 1997. The witness recanted his story at trial." *State v. Stokes*, 40,970-KA, Doc. 22-1, p. 5; see also Doc. 26-1, pp. 31-34.

Tony Hunter committed the murder.  Petitioner has not made out a "colorable showing of factual

innocence" so as to excuse his default and obtain review of his direct appeals claims.

It is therefore recommended that Petitioner's *habeas* claims raised on direct appeal –

claims 1, 2, and 3 (labeled as "supplemental argument")[ doc. # 1, P. 5-12] – be dismissed with

prejudice because Petitioner failed to exhaust state court remedies with regard to these claims

and although now technically exhausted, they remain procedurally defaulted.  This leaves

Petitioner's two remaining claims raised in his post-conviction release application, which will be

addressed in turn.

### 3. Post-conviction release application claims

### Standard of Review – 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. §

2254, governs *habeas corpus* relief.  The AEDPA limits how a federal court may consider

*habeas* claims.  After the state courts have "adjudicated the merits" of an inmate's complaints,

federal review "is limited to the record that was before the state court[.]"  *Cullen v. Pinholster*,

–––– U.S. ––––, 131 S. Ct. 1388, 1398 (2011).  An inmate must show that the adjudication of the

claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a

conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the

state court decides a case differently than [the Supreme Court] has on a set of materially

indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting

*Williams v. Taylor*, 529 U.S. 362 (2000)).  "The 'contrary to' requirement refers to holdings, as

opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-

court decision."  *Dowthitt*, 230 F.3d at 740.  Under the "unreasonable application" clause, a

federal *habeas* court may grant the writ only if the state court "identifies the correct governing

legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle

to the facts of the prisoner's case."  *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  Federal

courts presume such determinations to be correct; however, the petitioner can rebut this

presumption by clear and convincing evidence.  28 U.S.C. § 2254(e).

### *Insufficient evidence to support Petitioner's conviction*

For Petitioner's first claim, he argues that the evidence was insufficient to convict him of

Second Degree Murder beyond a reasonable doubt.  [doc. # 1, P. 12].  In support of this claim,

Petitioner maintains that the evidence was insufficient to identify him as the killer of Joseph

Collins and alleges that Tony Hunter committed the murder.  *Id.* at 13.

When a *habeas* petitioner asserts that the evidence presented to the court was insufficient

to support his conviction, the limited question before a federal *habeas* court is whether the state

appellate court's decision to reject that claim was an objectively unreasonable application of the

clearly established federal law set out in *Jackson v. Virginia*, 443 U.S. 307 (1979).  *Williams v.

Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002).  A conviction is based on sufficient evidence if,

14

"after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  The *Jackson* inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Thus, a conviction may rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

The Louisiana state court did not articulate, nor did it apply the *Jackson* standard.  In denying Petitioner's post-conviction release application, the trial court judge stated: "The Court is well familiar with this case and based upon a review of the record and the showing made this Application for Post-Conviction relief is denied."  [doc. 26-1, P. 2].

Although the state court did not articulate the specific evidence that it based its ruling on, the undersigned finds that the record before it supported the jury's finding of guilt.  At trial, the Prosecution presented several key witnesses in its case-in-chief to establish Petitioner's guilt.  First, Willie Copning, the only eyewitness to the crime, testified that he saw a man in a "black hooded sweater," who appeared to be "short," shoot the victim.  (R. 619).  Mr. Copning testified that he was able to positively identified Petitioner in a photographic lineup as the person that was similar in size to the shooter.  (R. 620-21).  Second, the Prosecution played a recorded statement of Freddie Wilhie in which he stated that Petitioner showed him a gun, and that Petitioner killed the victim for drugs.  (R. 644).  However, at trial, Mr. Wilhie recanted his earlier statements to the police as being "untrue."  (R. 645).  Third and finally, the Prosecution introduced Petitioner's

15

confession to the murder through the testimony of Detective Douglas Tarver.  (R. 671); *see also* (R. 39).

In conclusion, a  review of the state court record shows that the state court's findings were entirely reasonable; therefore, Petitioner's claim for relief based on insufficiency of the evidence should be **DENIED.**

### Ineffective assistance of appellate counsel

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254.  *See Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012); *Amos v. Thronton*, 646 F.3d 199 (5th Cir. 2011); *Pape v. Thaler*, 645 F.3d 281 (5th Cir. 2011).  Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the defendant of some other constitutional right. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Id.*

If the defendant does not make a sufficient showing as to one prong of the test, the other prong need not be considered.  *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997).  The prongs of the test also need not be analyzed in any particular order.  *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).  Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's

actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *See Strickland*, 466 U.S. at 689-90. The defendant must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the defendant must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *United States v. Saenz-Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Murray v. Maggio*, 736 F. 2d 279 (5th Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995). Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail time. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

In Petitioner's final claim, he argues that appellate counsel was ineffective for "fail[ure] to argue the insufficiency [of the evidence] issue on direct appeal." [doc. # 1, P. 19]. Petitioner's claim fails for two reasons. First, as the undersigned concluded *supra*, the Prosecution's evidence presented at trial supports the jury's guilty verdict; and therefore, Petitioner can not demonstrate that appellate counsel acted unreasonably or that Petitioner was actually prejudiced by counsel's failure to raise a meritless claim. *See Sones*, 61 F.3d at 415 n.5. Second, appellate counsel's failure to raise the issue on direct appeal did not prevent Petitioner from raising this precise issue in his *pro se* post-conviction release application, which, in fact, he

17

did.  As stated above, the state trial court reviewed Petitioner's claims and the record, and summarily denied the application.  (R. 990).  Thereafter, Petitioner appealed to the Second Circuit Court of Appeal, and the Louisiana Supreme Court, which denied the insufficiency of the evidence claim at each level.  (R. 1022, 1041).  Accordingly, Petitioner's appellate counsel cannot be ineffective for failing to raise a meritless claim, and furthermore, Petitioner is unable to demonstrate any actual prejudice as the issue was ultimately raised in his *pro se* application for post-conviction release.

### *Recommendation*

Considering the foregoing,

**IT IS RECOMMENDED** that the petition for *habeas corpus* filed by Petitioner Anthony Stokes [docs. # 1, 4] be **DENIED and DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Respondent's Motion to Dismiss for lack of exhaustion [doc. # 31] be **DENIED as moot.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or**

the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir.  1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties  may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** See 28 U.S.C. §2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 22nd day of January, 2013.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE